UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD ISNER,                                          No. 08-13417

        Plaintiff,                                 District Judge John Feikens

v.                                                     Magistrate Judge R. Steven Whalen

MINNESOTA LIFE INSURANCE, ET AL.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court are two motions to dismiss, one filed by Defendant Minnesota Life Insurance Company [Docket #25], and one filed by Defendant Unum Life Insurance Company of America [Docket #24]. Both have been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both Motions be GRANTED, and the Complaint DISMISSED WITH PREJUDICE..

**I.   FACTS**

On July 15, 2008, Plaintiff filed a five-count complaint in the Circuit Court for the County of Oakland, alleging contract and unfair trade practices claims arising out of two separate long-term disability insurance policies issued by Defendants Minnesota Life Insurance Company ("Minnesota Life") and Defendant Unum Life Insurance Company of America ("Unum"). Defendants removed the case to this Court on August 7, 2008, on the

basis of diversity and federal question jurisdiction, specifically the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et. seq.* On October 29, 2008, the Court denied Defendants' motion to dismiss, and granted the Plaintiff's motion to amend the complaint. *See* Docket #21. Plaintiff filed his amended complaint on November 12, 2008, making a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I) and a claim for equitable relief under 29 U.S.C. § 1132(a)(3) (Count II). On November 21, 2008, Defendant Unum filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) [Docket #24], and on November 24, 2008, Defendant Minnesota Life filed a similar motion to dismiss [Docket #25].

The essential facts are not in dispute. The Plaintiff, Arnold Isner, had long term disability ("LTD") insurance coverage with Defendant Minnesota Life, based on his employment as an agent for Minnesota Life, and a separate policy with Defendant Unum, based on his employment with Kapnick & Company. Plaintiff states that several years after the issuance of these policies, he became disabled as the result of Parkinson's Disease. *Amended Complaint*, ¶¶ 7-13. Plaintiff made claims for LTD benefits under both policies, and both claims were approved. Both Defendants paid Plaintiff LTD benefits in the full amount as provided under the respective policies. *Id*. ¶¶ 16-19. At a later date, Plaintiff began receiving Social Security Disability benefits of approximately $1,600 per month. *Id*. ¶¶ 20-21.

After Plaintiff began receiving Social Security Disability benefits, both Defendants reduced their LTD payments by the amount of the Social Security benefits. His benefits

from Defendant Minnesota Life were reduced to approximately $1,400 per month, and his benefits from Defendant Unum were reduced to approximately $400 per month. *Id*. ¶¶ 22-23. Thus, where his combined benefits from both policies before he received Social Security benefits were approximately $5,000 per month, they now totalled $1,800, a reduction of $3,200, or twice the amount of his Social Security benefits. *Id.* ¶¶ 24-25.

In Count I of the Amended Complaint, Plaintiff makes a claim for lost benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). He claims that the double-offset of his Social Security benefits constitutes both a violation of ERISA as a matter of law, as well as a breach of the terms of the respective policies. In addition to a request that Defendants be required to pay back benefits that were wrongfully withheld, Plaintiff asks that the Court declare "that both Defendants were not entitled to deduct the entire social security benefits from Mr. Isner's long-term disability insurance payments." *Id*. ¶¶ 29-32.

In Count II, Plaintiff makes a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3), again maintaining that it is it is unreasonable under ERISA for both Defendants to offset their LTD payments by the same amount of Social Security benefits.

Defendants have filed motions to dismiss, under Fed.R.Civ.P. 12(b)(6), arguing that the language of their respective plans permits them to offset the full amount of any Social Security disability payments.

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the

-3-

pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint

---

[1] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937,__L.Ed.2d__ (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. At 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950(Internal citations omitted).

### III. ANALYSIS

The basic question raised by Plaintiff in this case is whether ERISA permits a double-offset, by both Defendants, of a single Social Security Disability payment. Plaintiff frames the issue as follows:

> "Specifically, this action presents a legal issue of first impression in this circuit. The issue, under ERISA, is whether a plan may unreasonably integrate a plan participant's federal benefits thereby causing the participant to receive substantially less benefits than under a reasonable integration of

---

[2] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

the participant's benefits." *Plaintiff's Response*, *Docket #28*, p.3.

Integration is a method of calculating *retirement* benefit levels, described in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 514, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), as follows:

> "...[A] calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees." *Id.* at 514.

*Alessi* observed that the primary goal of ERISA is to benefit employees, and the subsidiary goal is to contain pension costs. *Id*. at 515. Integrating Social Security and pension benefits in a way that the recipient continues to receive the established level of pension payment serves both goals. "The individual employee remains entitled to *the established pension level*, but the payments received from the pension fund are reduced by the amount received through" other sources, such as Social Security. *Id*. at 516 (emphasis added).

ERISA also contains a non-forfeiture provision at 29 U.S.C. § 1053(a), which states, "[e]ach *pension plan* shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." (Emphasis added). Nevertheless, ERISA expressly preserves the option of integration of pension benefits with benefits available under the Social Security Act. 29 U.S.C. §§ 1054(b)(1)(B)(iv) and (b)(1)(C),(G).

In support of his argument that any integration of Social Security benefits is subject to a test of reasonableness, the Plaintiff relies on *Dameron v. Sinai Hospital of*

*Baltimore, Inc.*, 815 F.2d 975, 979-80 (4th Cir. 1987), where the Fourth Circuit held that while 29 U.S.C. § 1054 authorizes the integration of Social Security benefits with ERISA protected retirement benefits, the calculation of benefits using integration must be reasonable. In *Dameron*, the court held that the integration with estimates of Social Security benefits "which are not reasonably related to the actual level of Social Security benefits" violates the anti-forfeiture provisions of ERISA set forth in 29 U.S.C. § 1053(a). *See also Honeysett v. Allstate Insurance Company*, 570 F.Supp.2d 994, 1002-1003 (N.D. Ill. 2008)(citing *Dameron*) (unreasonable integration can violate ERISA's anti-forfeiture clause).

The heart of Plaintiff's argument, then, lies in the non-forfeiture clause, and if he were receiving retirement benefits, as opposed to disability (welfare) benefits, the Court would likely be presented with a question of fact as to the reasonableness of the "double integration" of Social Security benefits, because where a single Social Security payment is deducted from each of two ERISA plans, there is, from the recipient's perspective, a double offset that reduces the effective monthly benefit to an amount below the established benefit plans. *See Honeysett,* 570 F.Supp.2d at 1003 ("[A]n assessment of the reasonability of the Plan's method of calculation...is a question of fact not appropriate for determination on this motion to dismiss").[3] In this case, for example, the combined

---

[3] Defendants have cited *Pietrowski v. ACIA*, 65 F.Supp.2d 614 (E.D. Mich. 1999), in support of their argument that it is permissible for two different insurers to offset their payable benefits with Social Security benefits. *Pietrowski* involved a Social Security offset of ERISA disability benefits and benefits payable under a no-fault automobile

-7-

benefit under both plans is approximately $5,000. With the double offset, his total monthly benefit is only $3,400.

However, a disability plan is a welfare benefit plan, which is statutorily excluded from both the non-forfeiture and vesting provisions of ERISA. *See* 29 U.S.C. § 1051(1). Differentiating welfare benefit plans from retirement plans, the Supreme Court in *Curtiss-Wright Corp. v. Schoonejongen* 514 U.S. 73, 78, 115 S.Ct. 1223, 1228 (1995) noted:

> "[W]e are mindful that ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."

*See also McBarron v. S & T Industries, Inc.,* 771 F.2d 94, 98 (6th Cir.1985) ("Congress intended to allow any plan or part of a plan having disability provisions to be considered an 'employee welfare benefit plan,' and thus be exempt from the anti-forfeiture provisions"); *Lopez v. Commonwealth Oil Refining Co., Inc*., 833 F.Supp. 86, 89 (D.Puerto Rico,1993) ("[O]ffsetting [against Social Security benefits] does not violate the non-forfeiture provision of ERISA because the non-forfeiture provision does not apply to welfare benefit plans in the first place.").

---

insurance policy. The automobile insurance offset was governed by state law. In upholding the ERISA offset, the court relied on "ERISA's broad preemptive effect over state law." *Id*. at 621. In upholding the automobile insurance offset, the court relied on Michigan's No-Fault Act, M.C.L. § 500.3109(l). *Id.* at 622. While *Pietrowski* endorsed a double set-off under these unique circumstances, it is not clear whether that case would apply to integration of Social Security benefits with two ERISA pension plans, both of which would be subject to the reasonableness standard of *Dameron*. However, given the inapplicability of ERISA's non-forfeiture provision to welfare benefits, discussed below, the Court need not resolve that question.

Because Plaintiff's argument that the double-offset of Social Security benefits violates ERISA is dependent on the applicability of the non-forfeiture clause, his statutory claim fails as a matter of law. Instead, the only issue is whether the double-offset violates the express terms of either disability plan.

Each of the two disability policies in this case provides for an offset of Social Security Disability benefits. The Minnesota Life plan policy states, in pertinent part, that once the monthly benefit is calculated (essentially 60% of the employee's basic monthly earnings, not to exceed a maximum of $4,000), "other income benefits" are deducted. "Other income benefits" include:

> "(E)(5) the amount of disability or retirement benefits under the United States Social Security Act...as follows:
>
> (a) disability benefits for which you are eligible [.]"

The Minnesota Life plan also provides that "[t]he benefit payable will never be less than $100.00 or 10% of the gross monthly benefit, whichever is greater." *See Defendant's Renewed Motion to Dismiss, Docket #25, Exhibit B* (Certificate of Insurance).

Likewise, the Unum policy provides:

> "Unum will subtract from your gross disability payment the following deductible sources of income:
>
> (3) The amount that you receive or are entitled to receive as disability income payments under:
>
> -the United States Social Security Act."

Thus, each plan provides for the deduction of Social Security disability payments, and a minimum level of disability benefits notwithstanding any offsets. "[C]ourts must give effect to the unambiguous terms of an ERISA plan." *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996). In *Lake*, the Sixth Circuit upheld a disability plan provision that reduced benefits by Social Security retirement benefits that would be payable at age 62, regardless of whether the claimant was actually receiving those benefits. The court expressed some sympathy for beneficiaries who would be forced to apply for Social Security retirement benefits at age 62, thereby receiving a lower monthly amount than if they waited until age 65, but despite the apparent harshness of the result, enforced the plain terms of the plan:

> "We are not unsympathetic to the plight of the Pauley Plaintiffs. As a practical matter, the carve-out for social security retirement benefits payable at age sixty-two forced the Pauley Plaintiffs to apply for these benefits. The Pauley Plaintiffs now receive lower monthly social security benefits than they would otherwise be entitled to if they had waited until age sixty-five to receive such benefits. This reduction is permanent and continues despite the fact that they no longer receive LTD benefits. Nonetheless, courts must give effect to the unambiguous terms of an ERISA plan." *Id*.

*See also Padilla v. Triple-S, Inc.*, 500 F.Supp.2d 43, 48 (D.PR. 2007) (a court "does not have the power to redraft insurance contracts in order to 'palliate the effects of considered language on the occasional hard case.'" (Quoting *Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 490-91 (1st Cir. 1989).

The double-offset of a single Social Security Disability payment is a bad deal for the Plaintiff. It is harsh. Again, if the Plaintiff were receiving an ERISA protected pension benefit

-10-

rather than a welfare benefit, I would be inclined to let this case go forward under the statute's anti-forfeiture provision. But as unfair as it may seem, both plans in this case unambiguously provide for the offset, and this Court is constrained to give effect to those provisions.

Plaintiff also argues that the double-offset violated the intent of the policies, in that the actual benefits he received effectively fell below 60% of his basic salary under at least one of the policies. *Plaintiff's Response, Docket #28*, p.7. In so arguing, Plaintiff again confuses a disability plan with a pension plan. Under the former, the Plaintiff simply has no vested rights in a minimum defined benefit level. The plain language of the disability policies does not guarantee a payment of 60% of the base salary, but rather provides for a reduction of Social Security benefits, with a minimum benefit (10% or $100, whichever is greater, in the case of Minnesota Life) to be paid regardless of any offset. Plaintiff received the exact benefits provided for in the policies.

Plaintiff also urges this Court to apply federal common law to invalidate the double offset. Indeed, "Congress intended that the judiciary would develop and apply federal common law for ERISA claims." *Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997). However, "federal common law has only been 'fashion[ed]...when it is necessary to effectuate the purposes of ERISA." *Tassinare v. American Nat'l Ins. Co.*, 32 F.3d 220, 225 (6th Cir. 1994) (quoting *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992). The enforcement of the plain language of written plans is an important purpose of ERISA. In this regard, the Sixth Circuit in *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997), held:

> "A primary purpose of ERISA is to ensure the integrity and primacy of the written plans. *Duggan v. Hobbs,* 99 F.3d 307, 309-10 (9th Cir.1996); *Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir.1982). Thus, the plain language of an ERISA plan should be given its literal and natural meaning. *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989)."

Because federal common law does not permit the alteration of an otherwise unambiguous contract provision, it provides no basis for the Plaintiff to seek relief in this case.

Finally, Plaintiff's claim in Count II for equitable relief under 29 U.S.C. § 1132(a)(3) must be dismissed. The Supreme Court has held that § 1132(a)(3) may not be used to recover monetary damages. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (§ 1132(a)(3) not available to claimants who have other remedies under § 1132). Because Plaintiff in this case may pursue, and has pursued a claim for benefits under § 1132(a)(1)(B), he is precluded from seeking equitable relief under § 1132(a)(3). In this regard, the Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 615 (6th Cir. 1998):

> "The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies. *Varity,* 516 U.S. at 512, 116 S.Ct. 1065. Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). Wilkins availed himself of the remedy available to him under the statute. The district court reviewed his claim *de novo* and concluded that LINA's denial of benefits was correct. Wilkins therefore has no cause of action under any other subsection of §

1132. *See Varity,* 516 U.S. at 515, 116 S.Ct. 1065. Consequently, he cannot recover compensatory damages for an alleged breach of fiduciary duty."

Count II must therefore be dismissed.

### IV.   CONCLUSION

For these reasons, I recommend that Defendant Minnesota Life's Motion to Dismiss [Docket #25] and Defendant Unum's Motion to Dismiss [Docket #24] both be GRANTED, and that the Complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The

response shall address specifically, and in the same order raised, each issue contained within the objections.

                    s/R. Steven Whalen
                    UNITED STATES MAGISTRATE JUDGE

Dated:  September 23, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 23, 2009.

                    s/Susan Jefferson
                    Case Manager