UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD ISNER,

    Plaintiff,

                                            Civil No. 08-13417
                                            Hon. John Feikens

    v.

MINNESOTA LIFE INSURANCE COMPANY,
and
UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Defendants.
_____

**ORDER ADOPTING REPORT AND RECOMMENDATION**

       This case was referred to United States Magistrate Judge R. Steven Whalen pursuant to 28 U.S.C. § 636(b)(1)(B). There are two pending motions to dismiss this case, one filed by Defendant Minnesota Life Insurance Company ("Minnesota Life"), and one filed by Defendant Unum Life Insurance Company of America ("Unum") (Dkt. 24 & 25). Magistrate Judge Whalen issued a Report and Recommendation on September 23, 2009 (the "Report") (Dkt. 36). The Report recommends dismissing the Complaint against both Defendants for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

       Plaintiff filed timely Objections to the Report, and Defendants each filed a Response to Plaintiff's Objections (Dkt. 37-39). For the reasons set forth below, the Court will ADOPT the Report, OVERRULE Plaintiff's Objections, and GRANT both Defendants' Motions to Dismiss.

# I. BACKGROUND

## A. Relevant Factual Background

The essential facts in this case are undisputed. Plaintiff, Arnold Isner, had long term disability ("LTD") insurance coverage with Minnesota Life, based upon his employment as an agent for Minnesota Life, and a separate LTD policy with Unum, based upon his employment with Kapnick & Company. Several years after the issuance of these policies, Plaintiff became disabled as a result of Parkinson's Disease. (Amended Complaint ¶¶ 7-13). Plaintiff made claims for LTD benefits under both policies, both claims were approved, and Defendants each paid LTD benefits in the full amount under their respective policies. (*Id*. ¶¶ 16-19). Plaintiff received approximately $2,000 each month from Unum, and $3,000 each month from Minnesota Life. (*Id*. ¶¶ 21-23).

At a later date, Plaintiff began receiving Social Security Disability benefits of approximately $1,600 per month. (*Id*. at ¶¶ 20-21). Thereafter, pursuant to the LTD plan "other income" provisions, each Defendant reduced Plaintiff's LTD benefits by the full amount of his monthly Social Security award. (*Id*. ¶¶ 21-23). Plaintiff's Unum benefits were reduced to approximately $400 per month, and his Minnesota Life benefits were reduced to approximately $1,400 per month. This process, known as "integration" of benefits, caused a net reduction in Plaintiff's LTD benefits of $3,200, representing twice the amount of Social Security benefits he actually received. (*Id*. ¶¶ 24-25). Plaintiff contends this "double-offset" is impermissible under ERISA as a matter of law, as well as under the language and intent of the respective policies. (*Id*).

**B.     The Minnesota Life Policy**

The Minnesota Life Certificate of Insurance[1] (Dkt. 25, Ex. B) includes the following relevant provisions:

SECTION III - BENEFITS

* * *

C.     MONTHLY BENEFIT
To figure the amount of your monthly benefit . . . :
1. Multiply your basic monthly earnings by the benefit percentage [60%] indicated in box 3A of the schedule of benefits.
2. Take the lesser of the amount:
    a. determined in step (1) above; or
    b. of the maximum monthly benefit [$4,000] indicated in box 3A of the schedule of benefits, and
3. **Deduct other income benefits**, listed in this certificate, from this amount. (emphasis added)

* * *

D.     MINIMUM MONTHLY BENEFIT
The benefit payable will never be less than $100.00 or 10% of the gross monthly benefit, whichever is greater.

E.     **OTHER INCOME BENEFITS**
Other income benefits mean those benefits as follows:

* * *

5. The amount of disability or retirement benefits under the United States Social Security Act . . . as follows:
    a. **disability benefits for which you are eligible** (emphasis added).

* * *

SECTION V - SOME GENERAL INFORMATION TO KNOW
* * *

I.     DISCRETIONARY AUTHORITY
In making any benefits determination under the policy, we shall have the discretionary authority both to determine your eligibility for benefits and to construe the terms of the policy.

---

[1]The Minnesota Life Group Insurance Policy (Dkt. 25, Ex. A) contains nearly identical language.

3

**C.    The Unum Policy**

The Unum Policy (Dkt. 24, Ex. A) includes the following relevant provisions:

BENEFITS AT A GLANCE
Long Term Disability Plan
* * *

MONTHLY BENEFIT:
60% of monthly earnings to a maximum benefit of $10,000 per month.
**Your payment may be reduced by deductible sources of income and disability earnings . . . .** (emphasis added)

* * *
CERTIFICATE SECTION
* * *

When making a benefit determination under the policy, Unum has discretionary authority[2] to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

* * *
LONG TERM DISABILITY
Benefit Information
* * *

*How Much will Unum Pay if You Are Disabled?*
We will follow this process to figure your payment:
1.    Multiply your monthly earnings by 60%.
2.    The maximum **monthly benefit** is $10,000.
3.    Compare the answer from Item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.
4.    Subtract from your gross disability payment any **deductible sources of income.**

The amount figured in Item 4 is your **monthly payment**.
(emphasis in original)

---

[2] I note that both policies grant discretionary authority to determine Plaintiff's eligibility for benefits, as well as to interpret the terms and provisions of the policies, to the plan administrator. Therefore, should Plaintiff's case survive Defendants' Motion to Dismiss, he would need to demonstrate that Defendants' interpretation is arbitrary and capricious – a highly deferential standard of judicial review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Calvert v. Firstar Financial, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (internal quotation marks and citation omitted). In light of the plain language of the policy authorizing each Defendant's integration of Social Security benefits, it is difficult to imagine how their determinations could be deemed arbitrary or capricious.

\* \* \*
*What are Deductible Sources of Income?*
Unum will subtract from your gross disability payment the following deductible sources of income:
\* \* \*
3.	The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:
	- the United States Social Security Act
\* \* \*

*What are Not Deductible Sources of Income?*
Unum will not subtract from your gross disability payment income you receive from, but not limited to, the following:
\* \* \*
	- individual disability income plans
\* \* \*

*What if Subtracting Deductible Sources of Income Results in a Zero Benefit?*
The minimum monthly payment is the greater of:
-	$100; or
-	10% of your gross disability payment.

## II.  STANDARD OF REVIEW

The filing of timely objections requires the Court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  *See United States v. Raddtz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This *de novo* review, in turn, requires this Court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the Court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).  As Judge Cleland further explained in *Aldrich*:

> An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.
>
> * * *
>
> A general objection to the magistrate's report has the same effect as a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

*Id*. at 747-48.

## III.  DISCUSSION

The Report accurately explains that "[t]he basic question raised by Plaintiff in this case is whether ERISA permits a double-offset, by [two separate disability plans], of a single Social Security Disability payment." Report at 5-6. This specific question appears to be an issue of first impression for any federal court. After a thorough analysis, the Report concludes that nothing in ERISA, or in the plans, precludes the "double-offset" of Plaintiff's Social Security Benefits. Therefore, the Report recommends granting Defendants' Motions to Dismiss. For the reasons explained below, I agree and will adopt the recommendations in the Report.

**A.     Count I**

In support of Count I, for damages pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff advances three theories, each of which conveniently forms the basis for one of his objections.

*1)      Objection #1, The Double-Offset Violates ERISA's Intent*

Plaintiff argues that Congress speaks through its purpose, as well as its statutory language. He claims that Congress's intent in enacting ERISA was to "protect participants and beneficiaries."

Plaintiff contends that the double-offset violates this intent, and therefore, violates ERISA. Moreover, Plaintiff claims that, although ERISA generally permits integration of benefits, any such integration must be "reasonable."

Defendants counter that ERISA permits integration of benefits, and its fundamental purpose–ensuring that employee benefit plans provide their participants and beneficiaries with the benefits their written terms promise–is served by enforcing the plain language of the plans. Moreover, Defendants note that the case upon which Plaintiff relies for the purported "reasonableness" requirement (*Dameron*) requires integration of *pension* benefits with *estimated* Social Security benefits to be reasonable (in that case, the estimated benefits were calculated so as to *always* exceed the actual amounts). They further argue that *Dameron* interprets ERISA's non-forfeiture provision, which restricts certain reductions of vested pension benefits, but is inapplicable to disability/welfare benefits.

Magistrate Judge Whalen analyzed the case law cited by Plaintiff, as well as the non-forfeiture provision of ERISA, and found that the non-forfeiture provisions were inapplicable to the Defendants' welfare plans. He concluded that "[b]ecause Plaintiff's argument that the double-offset . . . violates ERISA is dependent on the applicability of the non-forfeiture clause, his statutory claim fails as a matter of law."

Although inartfully argued, Plaintiff's first objection disputes the Report's finding that the "heart of Plaintiff's argument . . . lies in the non-forfeiture clause." Plaintiff first suggests that Magistrate Judge Whalen improperly limited the analysis of *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S. Ct. 1895, 68 L. Ed. 2d (1981) to cases involving the integration of pension benefits–as opposed to welfare plans, such as Plaintiff's LTD benefits. Specifically, Plaintiff

7

contends that the *Alessi* Court expressly rejected the application of the non-forfeiture provisions of ERISA. Although Plaintiff is correct on that point, his reliance on *Alessi* is misplaced.

In *Alessi*, the Supreme Court explained that the non-forfeiture provisions of ERISA are premised on Congress's intention that a worker who was promised a defined pension benefit upon retirement–and who has fulfilled all conditions to vest that benefit–should receive his vested pension benefits. *Alessi*, 451 U.S. at 510 (citing *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980)). Notably, however, the Supreme Court found that the non-forfeiture provision protects only an employee's claim to benefits, but "does not guarantee a particular amount or a method for calculating the benefit." *Id.* at 512 (emphasis added). Indeed, the Court explained that ERISA leaves the determination of the "level of benefits" to "the private parties, not the Government." *Id.* at 511. *See also id.* at 525 ("ERISA leaves integration, along with other pension calculation techniques, subject to the discretion of pension plan designers."); *id.* at 526 n. 22 ("integration of pension benefits with other public income maintenance funds can be forbidden only by the terms of the pension plans themselves, or by new federal legislation.") (emphasis added).

Plaintiff also argues that *Alessi* requires courts to look to the Congressional intent of ERISA "as a whole." He alleges, without citation to authority, that Congress "did not intend for two plans to each take the same deduction . . . creating a double offset of benefits." Objection at 4. On the contrary, in *Alessi*, the Court explained that the congressional purpose of "promoting a system of private pensions by giving employers avenues for cutting the cost of their pension obligations" underlies the concept of permissible integration of benefits. *Id.* at 517 (emphasis added).

In addition, the Sixth Circuit's holding in *McBarron v. S & T Industries, Inc.,* 771 F.2d 94 (6th Cir. 1985) expressly limited *Alessi* to "the proposition that pension benefits which are clearly

<u>vested and nonforfeitable</u> under ERISA may be reduced by an amount equal to Workmens' Compensation benefits received by the retiree." *Id.* at 99 (emphasis added). In *McBarron*, the plaintiff applied for disability benefits under his employer's plan. McBarron had previously been awarded workers' compensation benefits in the amount of $6.97 per week, representing a five-percent award because only five percent of his injury was found to be work-related. His employer denied his claim for disability benefits because a provision of the plan stated, "[i]f a member is entitled to . . . workmen's compensation, he shall not be entitled to benefits from this plan unless and until benefits from such other program cease." *Id.* at 96. The district court, relying on ERISA's non-forfeiture provision, awarded the plaintiff the full amount of his disability benefits, offset by his $6.97 weekly workers' compensation award. *Id.* at 96. The Sixth Circuit reversed, limiting *Alessi* (as described above) and explaining that disability benefits are not subject to the anti-forfeiture provisions of ERISA. *Id.* at 97-99. The Court also rejected the lower court's apparent desire to "produce an equitable solution," explaining that <u>the employer "has the absolute right to enforce its contract with the plaintiff</u>." *Id.* at 98-99 (emphasis added). The Sixth Circuit further cautioned that forcing a plan to provide benefits that were not contemplated by the fund "may endanger the stability" of the plan. *Id.* at 99. Accordingly, the Sixth Circuit reversed the district court's award of benefits and remanded for a determination of the plan's intent. Notably, both the majority and the concurring opinions recognized that a total denial of benefits based on the plaintiff's minimal workers' compensation award may be appropriate, even if seemingly inequitable. *See id.* at 98-100 ("In this case, enforcement of the contract results in <u>denial of disability benefits</u> until plaintiff stops receiving Workmen's Compensation funds."); 101 ("if the proof shows that the parties intended to <u>disallow all disability benefits</u> otherwise payable under the plan when a qualified

9

plan member is entitled to <u>any</u> worker's compensation benefits, we must enforce that intent") (Engel, J., concurring) (emphasis added).

Under *Alessi* as limited by *McBarron*, the LTD benefits at issue in this case are not "protected" by ERISA's non-forfeiture provision. Accordingly, it is within each plan administrator's authority to determine whether Plaintiff's benefits under that plan are offset by Plaintiffs' Social Security benefits.

Having found that Defendants' integration of Plaintiff's Social Security benefits is generally permissible, I next turn to Plaintiff's argument that any such integration must be "reasonable." For this premise, Plaintiff has exclusively relied on a single case – *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975 (4th Cir. 1987). *Dameron*, however, rested entirely on ERISA's non-forfeiture provision. *Id.* at 979 (integration of estimated benefits "which are not reasonable calculations of actual . . . benefits . . . violate[s] the <u>nonforfeiture provisions</u> of ERISA.")(emphasis added); *see also id.* at 980 ("the plan's method of integrat[ion] . . . violates ERISA's <u>nonforfeiture</u> requirements") (emphasis added). Because the non-forfeiture clause is inapplicable to the welfare plans at issue here, *Dameron* offers no support for Plaintiff's claim that integration of his Social Security benefits must produce a "reasonable" result.

Having thoroughly reviewed the Report, Plaintiff's Objections and Defendants' Responses thereto, and the relevant law, I agree with Magistrate Judge Whalen's conclusion that ERISA authorizes the integration of Social Security benefits with those available under an employer's disability plan, and imposes no "reasonableness" requirement on such integration. Although this resolution has harsh consequences in Plaintiff's unusual situation, the integration is a permissible

method of cost containment, consistent with ERISA's purposes. Accordingly, Plaintiff's first objection is OVERRULED.

*2) Objection #2, The Double-Offset Violates the Intent of the Policies*

Plaintiff next argues that the Court should look beyond the language of Defendants' policies, and consider the "underlying intent." He claims that the policies state that his disability benefits will be "at least 60% of his pre-disability income."

As Defendants note, however, there is no language in the plans that guarantees such an income level. Rather, the plans indicate that the maximum benefit is capped at the lesser of 60% of pre-disability earnings or the plan maximum ($10,000 for Unum; $4,000 for Minnesota Life), which is to be further reduced by deductible sources of income (including Social Security benefits). Contrary to Plaintiff's suggestion, the plans define minimums that are substantially below 60% of his income: the minimum benefit under each plan is $100 or 10% of the gross disability payment, whichever is greater.

In the Report, Magistrate Judge Whalen articulated the language of the plans, including the monthly benefit calculation, deduction of "other income benefits", and minimum-monthly benefit described above. Because courts do not have the power to redraft insurance contracts in order to "palliate the effects of considered language on the occasional hard case" (*see Padilla v. Triple-S, Inc.*, 500 F. Supp. 2d 43, 48 (D. PR. 2007) (quotation omitted)), Magistrate Judge Whalen found the Court was "constrained to give effect to those provisions." He noted that "Plaintiff received the exact benefits provided for in the policies."

Plaintiff's second objection argues that the Report recognizes, but "does not give effect to the full language and intent of the Plans." Objection at 4. The Court's "paramount responsibility,"

11

he contends, is to "ascertain and effectuate the underlying intent of the policy." *Id.* at 5. Before a Court can ignore the plain language of a policy, however, there must be <u>an ambiguity</u> necessitating a choice between reasonable interpretations of the policy language. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006). Whether the language is ambiguous is a question of law. *Id.* at 851. In this case, I have no trouble concluding that "the language of the plan itself as known by the employees, or as the employees should have known" is unambiguous. *See id.* at 850. The plans expressly authorize integration of all Social Security benefits, without regard for whether any other plan integrates the same benefits. As the Sixth Circuit explained in *McBarron*, each plan "has the absolute right to enforce its contract" with Plaintiff, even if the result is harsh. *McBarron*, 771 F.2d at 98-99. Any alternative urged by Plaintiff could endanger the stability of the plans by forcing them to provide benefits not contemplated by the plans. *See id.* at 99.

Moreover, even if Plaintiff were correct, and this Court was required to evaluate the "intent" of the plans, there is nothing within the plans that expresses an intent to provide a minimum benefit of 60% of pre-disability income. Instead, the plans express a desire to contain costs by offsetting each participant's benefits by "other income" available from certain sources, including Social Security. The plans, as well as their other beneficiaries and participants are benefitted by such integration, as premiums are kept lower through a reduction of expenditures.

Plaintiff's second objection is OVERRULED.

### 3) Objection #3, Federal Common Law Should Be Applied to Prevent the Double-Offset

Next, Plaintiff urges the court to apply federal common law to "effectuate the purposes of ERISA." He relies exclusively on a Michigan case, *Pacific Ins. Co. v. Cordova Chemical Co. of Michigan*, No. 248778, 2005 WL 1399728 (Mich. App. June 14, 2005), the logic of which has been

held inapplicable to the circumstances involved in this case. *See Grau v. Detroit Auto Inter-Ins. Exch.*, 148 Mich. App. 82 (1985). Defendants note that federal courts may not apply common law theories to alter the express terms of written benefit plans.

In the Report, Magistrate Judge Whalen concluded that "[b]ecause federal common law does not permit the alteration of an otherwise unambiguous contract provision, it provides no basis for the Plaintiff to seek relief in this case."

Plaintiff objects that the Report "refuses to apply federal common law to this case based on the assumption [that] the language of the plans is unambiguous." Objection at 6. Plaintiff contends that each plan expresses the intent to provide 60% of pre-disability income, resulting in an ambiguity when read in connection with the offset provisions. As explained above, I find no ambiguity in the plain language of the plan. Accordingly, I concur with Magistrate Judge Whalen's conclusion, and find that federal common law provides no basis for Plaintiff's relief in this case. Plaintiff's third objection is OVERRULED.

**B.     Count II**

*1) Objection #4, Federal Common Law Should Be Applied to Prevent the Double-Offset*

Alternatively, Plaintiff seeks equitable relief under 29 U.S.C. § 1132(a)(3).

Defendants note that the Supreme Court held that § 1132(a)(3) may not be used to recover money damages.

Magistrate Judge Whalen agrees with Defendants, and further explains that the Sixth Circuit holds that where a plaintiff has a claim under § 1132(a)(1)(B), which allows him to bring a lawsuit to challenge a plan administrator's denial of benefits, "he does not have a right to a cause of action

. . . pursuant to § 1132(a)(3)." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Accordingly, Magistrate Judge Whalen recommends that Count II be dismissed.

Plaintiff objects, claiming that because the Magistrate recommends dismissal of Count I with prejudice, his 'other remedies' under § 1132(a)(1)(B) are foreclosed. Plaintiff makes this general and conclusory objection without argument or citation to any authority suggesting that the magistrate got this issue wrong. Therefore, the Court does not view Plaintiff's fourth objection as raising any objection subject to review under 28 U.S.C. § 616(b)(1). *See Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) ("The filing of vague, general or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object.").

Moreover, Magistrate Judge Whalen correctly concluded that the Sixth Circuit's holding in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) forecloses Plaintiff's remedies under 29 U.S.C. § 1132(a)(3). Report at 13. Because Plaintiff cites no authority to the contrary, his fourth objection is OVERRULED.

### IV.  CONCLUSION

For the reasons set forth above, I OVERRULE Plaintiff's Objections, ADOPT Magistrate Judge Whalen's Report and Recommendation, GRANT Defendants' Motions to Dismiss, and DISMISS Plaintiff's Complaint.

**IT IS SO ORDERED.**
Date: <u>December 22, 2009</u>             <u>s/John Feikens</u>
                                            John Feikens
                                            United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on December 22, 2009 by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager